# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

AHMAD BISHAWI,             )

                 )

         **Plaintiff,**     )

                 )

**v.**                  )    **Case No. 05-CV-0487-MJR**

                 )

**UNITED STATES OF AMERICA,**   )

                 )

         **Defendant.**    )

## MEMORANDUM AND ORDER

**REAGAN, District Judge:**

### A.  Background

       This case is now presented to the Court by motion under 28 U.S.C. § 2255.  Bishawi raises six grounds challenging his conviction and sentence.  However, many of Bishawi's claims have been procedurally defaulted, and all remaining claims are without merit.  Thus, for the reasons stated below, Bishawi's motion must be denied.

### 1.  Procedural History of the Underlying Criminal Case

       Bishawi's underlying criminal case began on September 4, 1997, when the United States filed a one-count indictment against Bishawi alleging that he and others engaged in an illegal conspiracy in violation of 21 U.S.C. § 846, the object of which was to distribute cocaine and cocaine base under 21 U.S.C. § 841(a)(1) (Case No. 97-CR-40044-PER; *see* Doc. 1-20, Exh. A1).  After Bishawi's first two appointed attorneys withdrew from the case, the Court appointed David Fahrenkamp as counsel.  Bishawi proceeded to trial before the Hon. Paul E. Riley, and a jury found Bishawi guilty on January 19, 1999.

       Post-trial, Bishawi indicated that he was yet again unhappy with his attorney's

representation and sought new counsel. The Court appointed Eric Butts to represent Bishawi during the sentencing phase. At sentencing, the Court determined that Bishawi's criminal history category was IV, with a total offense level of 32. Because the Court found that Bishawi distributed more than 50 grams of crack cocaine after having been convicted of a felony drug offense, he was subject to a mandatory minimum of 20 years under 21 U.S.C. § 841(b)(1)(A). As a result, Judge Riley sentenced Bishawi to 240 months' imprisonment on October 1, 1999.

Bishawi appealed to the Seventh Circuit, but while his appeal was pending, the Honorable Philip M. Gilbert, Chief Judge for the Southern District of Illinois at the time, informed Bishawi that there was a possibility that Judge Riley had communicated *ex parte* with jurors during the trial. In light of this, the Seventh Circuit granted Bishawi's motion to remand his case to the district court so that he could pursue a motion for new trial.

Sitting by designation, District Judge Richard Mills granted Bishawi's motion for a new trial after finding a likelihood that Judge Riley had engaged in improper contact with the jury. *United States v. Bishawi*, **109 F.Supp.2d 997 (S.D. Ill. Aug. 28, 2000).** On appeal, the Seventh Circuit reversed the decision and directed the district court to determine whether Judge Riley actually violated the defendant's rights by engaging in any improper communications. *United States v. Bishawi*, **272 F.3d 458 (7th Cir. 2001)**. After holding an evidentiary hearing, the district court determined that Bishawi's rights had not been violated and therefore denied the motion for new trial on February 25, 2002. *United States v. Bishawi*, **186 F.Supp.2d 889 (S.D. Ill. Feb. 25, 2002).**

As the denial of his new trial motion made his conviction and sentence final, Bishawi filed an appeal arguing only that the original order granting him a new trial should have been allowed to stand. *United States v. Bishawi*, **2002 WL 1489412 (7th Cir. 2002).** The Seventh Circuit disagreed and affirmed the district court's decision. *Id.* Bishawi then filed another notice

of appeal attacking his conviction and sentence, but the Seventh Circuit dismissed his appeal as untimely and denied reconsideration.

On July 11, 2003, Bishawi moved the district court to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 (Case No. 03-CV-4121-RHM). Therein, Bishawi raised seven grounds attacking the admissibility and sufficiency of the evidence at trial, attacking the sufficiency of the indictment, and arguing that he had not received effective assistance of counsel. ***See Bishawi v. United States***, **292 F.Supp.2d 1122 (S.D. Ill. Nov. 24, 2003).** The Government conceded that Bishawi had received ineffective assistance of counsel on his direct appeal, as counsel failed to file a single consolidated appeal attacking Bishawi's sentence and conviction after his motion for new trial was denied. ***Id.* at 1126.** The district court agreed, finding that Bishawi was entitled to relief for his attorney's ineffective assistance on appeal. ***Id.* at 1128.** Consequently, the court vacated and immediately reimposed Bishawi's conviction and sentence, so as to permit him the opportunity to timely challenge his conviction and sentence on direct appeal. ***Id.* at 1129-30.** Because Bishawi could still raise all other grounds on appeal, the Court found his other arguments to be premature. ***Id.* at 1129.**

On direct appeal, Bishawi was represented by Vilijia Bilaisis, his fifth attorney. Bishawi challenged his sentence on the grounds that the district court's finding with respect to the drug quantities involved in his case was erroneous. ***United States v. Bishawi***, **2004 WL 2179228 (7th Cir. 2004).** On September 10, 2004, the Seventh Circuit affirmed Bishawi's conviction and sentence. ***Id.***

## 2. Bishawi's Current Motion

On July 8, 2005, Bishawi filed a *pro se* motion to vacate, set aside, or correct his

sentence under 28 U.S.C. § 2255 (Doc. 1). The motion was fully briefed as of November 7, 2005, but it was reassigned from Judge Mills to the undersigned District Judge on April 24, 2007 (Doc. 9). Having conducted a review of Bishawi's motion under **Rule 8(a)** of the **RULES GOVERNING SECTION 2255 PROCEEDINGS**, the Court found that an evidentiary hearing was warranted due to the complexity of the case's history (Doc. 13). Accordingly, the Court appointed counsel for Bishawi pursuant to **Rule 8(c)** and set a hearing for July 25, 2008. At the request of defense counsel, the Court continued the hearing to September 3, 2008 (Doc. 21). However, the Court converted that hearing to a status conference after Bishawi's counsel filed another motion to continue, having learned that Bishawi would probably not be present in this district prior to the hearing. Ultimately, the Court continued that setting and held the evidentiary hearing on September 18, 2008 (Doc. 31).[1]

Having thoroughly reviewed the record and the parties' arguments, it is clear that Bishawi's § 2255 motion must be denied for the reasons stated below.

### B. Issues Raised

Bishawi raises six issues in the instant motion.

(1) First, Bishawi argues that his sentence is illegal and was imposed as an application of the incorrect sentencing range. Bishawi argues that the indictment did not charge a particular drug quantity, and the jury did not determine one. As a result, he claims that the judge's later determination of drug quantities (1) was not supported by the evidence, (2) was determined in

---

[1] At the September 18, 2008 hearing, the Government objected to holding an evidentiary hearing at all. The Court notes that an evidentiary hearing was set given the circuitous and complex route this case has taken. Aside from the fact that the instant § 2255 motion has found its way before multiple District Judges, the underlying criminal case was subject to various appeals, various attorney appointments were made, and two separate District Judges, neither of which was the undersigned District Judge, addressed trial and sentencing issues prior to the direct appeal. Given the complexity of the case history, the Court felt that an evidentiary hearing would be helpful.

violation of his Sixth Amendment right to trial on all facts that could increase his sentence, and (3) resulted in the application of an improper guideline range thereby making the sentence imposed unreasonable.

(2)  Bishawi's second argument in many ways expounds on the first.  He argues that by having the judge determine the relevant drug type and quantity by a preponderance of evidence, the Court denied him his right to have a jury determine all aggravating facts and elements of the charge beyond a reasonable doubt.

(3)  Next, Bishawi claims that a variance existed between the charges in the indictment and the proof submitted at trial.  Bishawi argues that the Court erred by instructing the jury to convict him if it found that he conspired to distribute either crack or cocaine base, even though the indictment charged him with distributing both crack and cocaine base.  Bishawi also notes that the indictment did not charge him with conspiracies involving marijuana, yet the Government produced evidence of marijuana trafficking.  Additionally, Bishawi argues that the Government produced inadmissible evidence of his prior bad acts, including his deportation and incidents involving drug use.

(4)  Next, Bishawi argues that the Court erred in allowing F.B.I. Agent Robert Shay to testify at trial about an alleged confession.  Bishawi claims that he never made any such confession.  Rather, he claims that he was interviewed by Shay with respect to an unrelated bank fraud investigation, that he was never given *Miranda* warnings, and that when the topic of drugs came up, he invoked his Fifth Amendment privilege.  Nonetheless, Shay testified that Bishawi admitted involvement with the drug conspiracy.

(5)  Bishawi also argues that the Court lacked subject matter jurisdiction over his case because (a) the indictment was obtained solely on grand jury testimony provided by Agent Shay,

which was based entirely on hearsay and unsupported by independent evidence, (b) the indictment was not returned by the Grand Jury in open court, (c) the indictment was not returned within the statute of limitations, (d) the indictment failed to state essential elements of the charged offense including the drug quantity, (e) the indictment was unsupported by a showing of jurisdiction, and (f) the indictment charged Bishawi with statutes that were either never adopted by Congress or were repealed.

(6) Finally, Bishawi argues that each of the five attorneys who represented him provided ineffective assistance at every stage of the case.

## C. Analysis

Generally, petitioners are not permitted to file a second or successive motion under § 2255 unless permission to do so is first obtained from the court of appeals. **28 U.S.C. § 2255(h); see Curry v. United States, 507 F.3d 603, 604-05.** However, "an order *granting* a § 2255 petition, and reimposing sentence, resets to zero the counter of collateral attacks pursued." **Shepeck v. United States, 150 F.3d 800, 801 (7th Cir. 1998) (per curiam) (emphasis in original).**

In Bishawi's previous motion under § 2255, the court found that Bishawi received ineffective assistance from his appellate counsel, and then vacated and reimposed his sentence and conviction. **See Bishawi v. United States, 292 F.Supp.2d 1122, 1128-30 (S.D. Ill. Nov. 24, 2003).** Additionally, the Court found that the substantive issues raised by Bishawi were premature at that time, as the option of a direct appeal remained available. **Id.** As a result, though this is the second § 2255 motion Bishawi has filed, the instant motion does not constitute an impermissible successive petition.

Section 2255 authorizes a federal prisoner to ask the court which sentenced him to vacate, set aside, or correct his sentence, if "the sentence was imposed in violation of the

Constitution or laws of the United States, or . . . the court was without jurisdiction to impose such sentence, or . . . the sentence was in excess of the maximum authorized by law." But relief under § 2255 is limited. Unlike a direct appeal, in which a defendant may complain of nearly any error, § 2255 proceedings may be used only to correct errors that vitiate the sentencing court's jurisdiction or are otherwise of constitutional magnitude. ***See Corcoran v. Sullivan*, 112 F.3d 836, 837 (7th Cir. 1997) (§ 2255 relief is available only to correct "fundamental errors in the criminal process").**

The Seventh Circuit has declared that § 2255 relief "is appropriate only for an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice." ***Harris v. United States*, 366 F.3d 593, 594 (7th Cir. 2004) (citing *Borre v. United States*, 940 F.2d 215, 217 (7th Cir. 1991)). *Accord Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007) ("[R]elief under § 2255 is an extraordinary remedy because it asks the district court essentially to reopen the criminal process to a person who already has had an opportunity for full process."); *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996) ("relief under 28 U.S.C. § 2255 is reserved for extraordinary situations").**

### 1. Bishawi's First Four Claims

Bishawi has procedurally defaulted his first four claims because he either raised these issues on direct appeal, or else failed to raise them even though they were ripe for review. It is well-settled that issues raised on direct appeal may not be relitigated on collateral attack except in narrow circumstances where the substantive law has changed, or where new evidence surfaces and could not have been discovered earlier. ***Peoples v. United States*, 403 F.3d 844, 847 (7th Cir. 2005); *White v. United States*, 371 F.3d 900, 902 (7th Cir. 2005).** On direct appeal, Bishawi challenged

the district judge's finding that the conspiracy involved more than 50 grams of crack cocaine. **2004 WL 2179228.** Accordingly, all of Bishawi's challenges to his sentence with respect to this issue are barred from subsequent review.

Additionally, a petitioner under § 2255 generally may not litigate claims that he could have but failed to raise on direct appeal. ***Bousley v. United States*, 523 U.S. 614, 621 (1998) (noting that "[h]abeas review is an extraordinary remedy and 'will not be allowed to do service for an appeal.'" (quoting *Sunal v. Large*, 332 U.S. 174, 178 (1947))); *Young v. United States*, 124 F.3d 794, 795-96 (7th Cir. 1997) ("Section 2255 is not a way to advance arguments that could have been presented earlier.").** Here, none of Bishawi's other arguments in his first four claims were raised on direct appeal, even though they were ripe for review. As Bishawi has shown neither cause for this failure, nor prejudice, these arguments have been procedurally defaulted.

Accordingly, the Court must deny Bishawi's request for collateral relief as to his first four claims.

## 2. Bishawi's Fifth Claim

In his fifth claim, Bishawi argues that the indictment was improperly obtained, was untimely, and failed to adequately apprise him of the crime with which he was charged. He also claims that the district court lacked subject matter jurisdiction because the indictment was based on federal laws that were either never adopted by Congress or else have been repealed.

As with his previous claims, Bishawi has procedurally defaulted any attack against the indictment. *See Bousley*, **523 U.S. at 621.** The Court can find no reviewable, non-frivolous argument in Bishawi's motion regarding the sufficiency of the indictment.

However, no court may decide a case without subject matter jurisdiction, and the

parties cannot waive arguments that the court lacks such jurisdiction. As a result, Bishawi has not procedurally defaulted the argument that the district court lacked subject matter jurisdiction. Nonetheless, that argument is entirely without merit.

**18 U.S.C. § 3231** confers original jurisdiction upon the district court

> to try charges framed by federal indictments . . . district judges *always* have subject-matter jurisdiction based on *any* indictment purporting to charge a violation of federal criminal law . . . so errors in a non-frivolous indictment do not strip the district court of jurisdiction.

*United States v. Bjorkman*, **270 F.3d 482, 490 (7th Cir. 2001) (emphasis in original).** The indictment in the underlying criminal case clearly alleged that Bishawi violated 21 U.S.C. § 846 by conspiring to intentionally distribute cocaine and cocaine base, itself a violation of 21 U.S.C. § 841(a)(1). The district court clearly did not lack jurisdiction over Bishawi's criminal case on that basis.

Bishawi also argues that the district court lacked subject matter jurisdiction over his case, because 21 U.S.C. §§ 841 and 846 were repealed or else never officially enacted. This claim is patently untrue and need not delay the Court long, except to note that these provisions were enacted on October 27, 1970 as part of the Controlled Substances Act of 1970, Pub.L. No. 91-513, §§ 401 & 406, 84 Stat. 1242, 1260-62, and have never been repealed.

Bishawi's citation of Judge Becker's concurring opinion in *United States v. Vazquez,* **271 F.3d 93, 107 (3d Cir. 2001)** does not indicate otherwise. Additionally, the opinion never suggests that Congress failed to enact §§ 841 and 846 or that these sections were otherwise repealed. Though the concurrence suggests that certain labels and headings within the statute were never officially adopted by Congress, that fact is meant to support the position that provisions in the "penalties" section of § 841 are in fact elements of the crime, rather than sentencing factors. *Id.* **at**

**111.**  To be sure, the concurrence in *Vazquez* necessarily accepts the validity of § 841 as a properly enacted federal statute, and only voices disagreement with the Third Circuit's interpretation of its requirements.  At any rate, the arguments included therein do not support Bishawi's contention that the district court lacked subject matter jurisdiction over his criminal case.

Accordingly, the Court must deny Bishawi's request for collateral relief as to his fifth claim.

### 3.  Bishawi's Sixth Claim

Finally, the Court addresses Bishawi's claims that each of the five attorneys who represented him were ineffective.  Under the law of this Circuit, because counsel is presumed effective, a party "bears a heavy burden in making out a winning claim based on ineffective assistance of counsel."  *United States v. Trevino,* **60 F.3d 333, 338 (7th Cir. 1995).**  To succeed, a § 2255 petitioner must show that his counsel's performance fell below an *objective* standard of reasonableness <u>and</u> that this deficient performance so prejudiced his defense that he was deprived of a fair trial.  *Id.* **(citing *Strickland v. Washington*, 466 U.S. 668, 688-94 (1984)).**  Stated another way, under the *Strickland* test, the petitioner must show that his counsel's actions were not supported by a reasonable strategy, and that the error was prejudicial.  *Massaro v. United States,* **538 U.S. 500, 501 (2003).**

The first prong of the *Strickland* test, called the "performance prong," calls for the § 2255 petitioner to direct the court to specific acts or omissions forming the basis of his claim. *Trevino*, **60 F.3d at 338 (citing *Strickland*, 466 U.S. 668).**  The court then must determine whether, in light of all the circumstances, those acts or omissions fell "outside the wide range of professionally competent assistance." *Id.*

While making this assessment, the Court must be "mindful of the strong presumption that counsel's performance was reasonable." *Id.  Accord Fountain v. United States***, 211 F.3d 429, 434 (7th Cir. 2000) (explaining that counsel is *presumed* effective, and the court must bear this in mind when determining whether the allegedly deficient actions of counsel "were outside the wide range of professionally competent assistance").**

If the petitioner satisfies the performance prong, he must then meet the "prejudice prong" of *Strickland*.  This requires the defendant to demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." ***Emezuo v. United States***, **357 F.3d 703, 707-08 (7th Cir. 2004) (citing *Strickland*, 466 U.S. at 694).**  A reasonable probability is a probability "sufficient to undermine confidence in the outcome." *Id.*

### a.  Attorneys Storment and Hess

As the Court noted, Bishawi challenges the effectiveness of all five attorneys who represented him in his criminal case.  The Court can easily dispose of Bishawi's arguments against his first two attorneys, for even if he were able to show that they deficient on the performance prong, each were replaced long before trial such that Bishawi suffered no prejudice from any ineffectiveness.  Attorney Paul Storment was appointed at the outset of the action, but withdrew from the case on June 12, 1998 (Case No. 97-CR-40044, Doc. 115).  The Court appointed Federic Hess on June 17, 1998 (Case No. 97-CR-40044, Doc. 116) and permitted Hess to withdraw on October 8, 1998 (Doc. 152).[2]  This case did not proceed to trial until January 11, 1999.

Thus, even if the Court were to find that Storment and Hess were each deficient in

---

[2]  Hess is the former United States Attorney for the Southern District of Illinois.

their representation, Bishawi suffered no prejudice as new counsel was appointed well in advance of trial.

### b. Attorney Fahrenkamp

Bishawi's third attorney, David Fahrenkamp, was appointed on October 8, 1998 (Case No. 97-CR-40044, Doc. 152). Bishawi first complains that as of December 28, 1998, Fahrenkamp had not been in active communication with him. Accordingly, Bishawi sought termination of counsel just prior to trial (Case No. 97-CR-40044, Doc. 167). Judge Riley held a hearing on January 4, 1999, wherein Fahrenkamp indicated that he and Bishawi previously held brief meetings, and that Fahrenkamp provided him with phone numbers where counsel could be reached, but Bishawi had yet to call. **Hearing Trans., Jan. 4, 1999, pp. 3-4.** Fahrenkamp also explained that he and Bishawi disagreed on how to proceed, and that he believed Bishawi's preferred strategic approach was not in his client's best interests. For instance, Fahrenkamp stated:

> [W]ithout getting into any other details . . . I think that he and I disagree on how to proceed and that the manner which I think he should proceed in this case is probably, by what he has expressed to me, pretty closely diametrically opposed to how he wants me to proceed.

**Hearing Trans., Jan. 4, 1999, p. 4.** Additionally, Fahrenkamp informed the Court that "we are two horses that want to pull in a different direction in the case," and stated, "I find that I am in a position where I am spending more time doing things that I don't think are for his best interest than I would for what I think is needed to accomplish the case." **Hearing Trans., Jan. 4, 1999, pp. 8-9, 14.**

Nonetheless, Judge Riley denied the motion to terminate counsel, continued trial to January 11, 1999, and directed Fahrenkamp and Bishawi to meet every day until trial. **Hearing Trans., Jan. 4, 1999, pp. 14-15.** Even if the Court were to find that Fahrenkamp's lack of communication prior to the January 4, 1999 hearing constituted deficient performance, Bishawi

cannot be said to have suffered any prejudice as he admits that Fahrenkamp did in fact meet with him that week, and they worked together to prepare a defense plan (*See* Doc. 1-17, p. 111).

Bishawi appears to be generally satisfied with Fahrenkamp's performance on the first two days of trial, stating that "defense counsel performance was in accordance to the plan discussed with the defendant; he showed some good performance" (Doc. 1-17, p. 111). However, Bishawi still unleashes a laundry list of complaints indicating his dissatisfaction with the overall representation. The Court addresses only Bishawi's primary contentions, as the rest are simply generalized variations on the same theme, none of which indicate that Fahrenkamp was ineffective.

For instance, Bishawi claims that Fahrenkamp failed to adequately cross-examine witnesses throughout the trial. He also argues that Fahrenkamp failed to object to certain testimony and physical evidence, specifically a triple beam scale which was seized from the home of one of Bishawi's alleged co-conspirators. Bishawi also complains that on the final day of trial, Fahrenkamp failed to call witnesses that Bishawi had requested and failed to object to certain statements made by the Government during closing argument. He also claims that counsel should have submitted jury instructions on the drug quantity and in support of a variance defense. Instead, however, Bishawi states that Fahrenkamp submitted an instruction on a buyer-seller theory of defense, which Bishawi did not support. Finally, he notes that Fahrenkamp has since been disbarred from the Seventh Circuit (*See* Doc. 1-24, Exh. F2).

The Court cannot find that Fahrenkamp's trial performance constitutes ineffective assistance of counsel under *Strickland*. All of the Bishawi's complaints stem from questions of strategy and trial tactics—decisions which the attorney has the authority to make. As the Seventh Circuit has repeatedly explained, the court "is not free to question the objectively reasonable strategic decisions of counsel. . . . 'strategic choices made after thorough investigation of law and

-13-

facts relevant to plausible options are virtually unchallengeable.'" ***Harris v. Reed***, **894 F.2d 871, 877 (7th Cir. 1990) (quoting *Strickland*, 466 U.S. at 690).** Additionally, it is well-established that

> "the accused has ultimate authority to make certain fundamental decisions regarding the case, as to whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal," but the remaining decisions are in the hands of counsel. It could hardly be otherwise, unless trials are to be indefinitely extended as judges ask the defendant whether each decision (or omission) meets with his pleasure. . . . The defendant decides whether to go to trial and makes a few strategic decisions (such as whether to demand a jury) that shape the events, but the tactical choices rest with counsel.

***United States v. Boyd***, **86 F.3d 719, 723 (7th Cir. 1996) (quoting *Jones v. Barnes*, 463 U.S. 745, 751 (1983)).**

Each of Bishawi's specific claims revolve around tactical decisions that are within the sound discretion of counsel. And "decisions by counsel are generally given effect as to what arguments to pursue, what evidentiary objections to raise, and what agreements to conclude regarding the admission of evidence. Absent a demonstration of ineffectiveness, counsel's word on such matters is the last." ***New York v. Hill***, **528 U.S. 110, 115 (2000) (citations omitted).** Bishawi has not, however, made any demonstration of ineffectiveness. He simply sets forth his own disagreement with Fahrenkamp's trial strategies and decisions.

Additionally, the trial transcript shows that while Fahrenkamp may not have made each and every objection that Bishawi desired, he did make a wide variety of objections and remained actively involved throughout the Government's case. Indeed, as the Government itself notes, many of Fahrenkamp's objections were sustained. ***See, e.g.,*** **1 Trial Trans. pp. 156, 158, 166, 167, 175; 2 Trial Trans. pp. 124, 139, 145; 3 Trial Trans. pp. 6, 65, 107, 109-10.** In one instance, this resulted in limiting certain testimony regarding Bishawi's deportation. **2 Trial Trans.**

**pp. 103-08.**  Fahrenkamp also performed thorough cross-examination on the Government's witnesses.  ***See, e.g.*, 1 Trial Trans. pp. 143–46; 2 Trial Trans. pp. 23–74, 93–100, 152–77, 205–13; 3 Trial Trans. pp. 30–62, 136–79.**  After a review of the trial transcript, it is clear that Fahrenkamp was actively engaged throughout the trial, regularly objected to improper testimony, and adequately cross-examined Government witnesses.  There is no indication that his performance in these respects was in any way deficient.

With respect to Fahrenkamp's failure to object to the triple-beam scale, which was seized from co-conspirator Ladendorf's home, the Court notes that the evidence appears to have been admissible background evidence.  Indeed, Ladendorf testified that he used the scale when weighing cocaine that he purchased from Bishawi.  **1 Trial Trans. pp. 182–84.**  In any case, it is difficult to see how Bishawi was prejudiced by the scale's presence in light of the vast amount of other evidence against him.

The same is true with respect to Bishawi's claim that Fahrenkamp failed to object to certain "inflammatory remarks" made by Government counsel during closing arguments.  First, Bishawi never pinpoints which remarks he finds "inflammatory."  But in any event, it appears that Fahrenkamp made a strategic decision not to object to statements about facts and evidence already before the jury.  Such a decision is clearly reasonable.  As with the other instances where Fahrenkamp opted not to object, "[a] competent trial strategy frequently is to mitigate damaging evidence by allowing it to come in without drawing additional attention to it, such as an objection would."  ***Hardamon v. United States*, 319 F.3d 943, 949 (7th Cir. 2003).**  Bishawi fails to convince this Court that Fahrenkamp's decisions not to object were due to his ineffectiveness rather than the result of a rational defense strategy.

Bishawi also argues that Fahrenkamp should have called certain witnesses as he

requested. However, it is clear that Fahrenkamp did in fact subpoena three witnesses on Bishawi's behalf: Guy Westmoreland, Frederick Hess, and Pamela Heady. Westmoreland invoked the Fifth Amendment (4 Trial Trans. pp. 2–5), Hess testified for Bishawi (4 Trial Trans. pp. 11–24), and Heady failed to appear (4 Trial Trans. pp. 24–25). With respect to other witnesses Bishawi wanted to testify, Fahrenkamp explained to the Court that

> [i]t has been my advice to him that in my professional opinion, calling those witnesses will result in detriment to his case. . . . I would say that based on my conversation with them or based on my opinion as to what they would testify to, that not only would their testimony be irrelevant and stricken by the Court and not allowed, and some would focus on an aspect of the case that I do not think serves his best interests.

**4 Trial Trans. pp. 9–10.** Thus, Fahrenkamp demonstrated that he was well aware of the anticipated testimony from these potential witnesses and simply deemed it poor trial strategy to proceed with those witnesses. There is no apparent deficiency in Fahrenkamp's representation with respect to which witnesses were called.

Bishawi's next argument—that Fahrenkamp was ineffective because he failed to request a jury instruction requiring a jury finding on the quantity of the drugs involved—is clearly without merit. At the time of trial, a special verdict on drug type and quantity was not required under prevailing Seventh Circuit law. *See United States v. Edwards*, **105 F.3d 1179, 1180-81 (7th Cir. 1997), aff'd, 523 U.S. 511 (1998) (stating that "under the Sentencing Guidelines, the judge alone determines which drug was distributed, and in what quantity.");** *see also Knox v. United States*, **400 F.3d 519, 520 (7th Cir. 2005) (noting that prior to the Supreme Court's 2000 decision in** *Apprendi v. New Jersey*, **530 U.S. 466 (2000), drug type and quantity "had been issues for the judge to resolve on the preponderance standard.").** Fahrenkamp's refusal to request an instruction requiring the jury to find these facts was in accordance with the prevailing law

at the time and was therefore entirely reasonable.

Bishawi next argues that Fahrenkamp was ineffective because he failed to seek an instruction providing that the jury had to find that Bishawi engaged in a conspiracy to distribute both cocaine and cocaine base. The Court, however, instructed the jury that "It is sufficient to sustain a guilty verdict if you find that the defendant conspired to distribute cocaine or cocaine base." **Jury Instr. Trans., Jan. 19, 1999, p. 8.** This instruction is supported by the law. It is permissible for the indictment to charge the drugs involved in the conspiracy in the conjunctive, while the jury instructions state them in the disjunctive. *United States v. Muelbl*, **739 F.2d 1175, 1180–82 (7th Cir. 1984).** This is because when the grand jury indicts a defendant for conspiracy to distribute two drugs, it necessarily indicts the defendant for conspiring to distribute each of the drugs individually. *Id.* **at 1181.** Thus, "[w]e are not left with a concern that the grand jury would not have indicted as to any one of these drugs separately." *Id.* Accordingly, Bishawi's argument that Fahrenkamp should have insisted on an instruction to the contrary is unavailing, as Fahrenkamp was not required to raise frivolous arguments on Bishawi's behalf.

Additionally, Bishawi's complaint that Fahrenkamp's submission of an instruction in support of a buyer-seller defense is without merit. Confronted with a great deal of evidence indicating that Bishawi had repeatedly been involved in drug transactions, Fahrenkamp obviously saw a buyer-seller instruction as the best chance for acquittal on the conspiracy charge. The instruction that was provided states as follows:

> The existence of a single buyer/seller relationship between a defendant and another person, without more, is not sufficient to establish a conspiracy, even where the buyer intends to resell cocaine and cocaine base. The fact that the defendant may have bought cocaine and cocaine base from another person or sold cocaine and cocaine base to another person is not sufficient without more to establish that the defendant was a member of the charged conspiracy.

> In considering whether a conspiracy or a simple buyer/seller relationship existed, you should consider all the evidence, including the following factors:
> (1) Whether the transaction involved larger quantities of cocaine and cocaine base;
> (2) Whether the parties had a standardized way of doing business over time;
> (3) Whether the sales were on credit or in consignment;
> (4) Whether the parties had a continuing relationship;
> (5) Whether the seller had a financial stake in resale by the buyer;
> (6) Whether the parties had an understanding that cocaine and cocaine base would be resold.
> No single factor necessarily indicates by itself that a defendant was or was not engaged in a simple buyer/seller relationship.

**Defendant's Jury Instr. No. 9.** The use of this instruction was clearly a tactical move by Fahrenkamp. The buyer-seller instruction informed the jurors that repeat drug sales alone do not constitute a conspiracy. The logic of forwarding such a defense is that a jury may believe that the defendant engaged in repeated drug transactions, yet still find that the defendant was not engaged in an illegal conspiracy to distribute those drugs. In light of the Government's evidence, which overwhelmingly showed that Bishawi was engaged in drug transactions, it was not an unreasonable strategy for Fahrenkamp to forward such a defense on Bishawi's behalf. Indeed, it may have been Bishawi's best chance of obtaining an acquittal.

Additionally, counsel's refusal to submit an instruction on variance as Bishawi asked does not constitute ineffective assistance of counsel. Bishawi claims that the evidence at trial failed to show that the alleged conspiracy involved an agreement to distribute crack. But as should already be clear, the evidence at trial did not vary from the indictment. As previously noted, the prosecution needed only to show that the conspiracy involved either cocaine or crack. Nonetheless, there was a great deal of evidence that the conspiracy involved both cocaine and crack. ***See, e.g.*, 1 Trial Trans. pp. 152–93 (discussing cocaine deals between Ladendorf and Bishawi), 195–98**

-18-

(discussing the purchase of "bullets" from Bishawi); 2 Trial Trans. p. 103 (identifying "bullets" as crack), 135–38 (discussing Bishawi's sales of "bullets"); 3 Trial Trans. pp. 20–22, 24–27 (discussing the purchase of "bullets" and identifying "bullets" as being crack), 7–30 (discussing general cocaine transactions between the Ladendorfs and Bishawi), 122 (stating that Bishawi told Agent Shay that he obtained crack in the form of "bullets" from Venezuela). Because Bishawi's argument with respect to the lack of a variance instruction is frivolous, the Court need not belabor the issue.

Bishawi also focuses on Fahrenkamp's later disbarment from the Seventh Circuit in May 1999 as evidence that he provided ineffective assistance of counsel in Bishawi's own case (*See* Doc. 1-24, Exh. F2). However, Fahrenkamp was disciplined for his inability to timely file appeals and his failure to respond to the Seventh Circuit's repeated orders to show cause. While troubling, there is no indication from the trial transcript or the record before this Court that the problems plaguing Fahrenkamp in prosecuting his clients' appeals also affected his representation at Bishawi's trial. As thoroughly discussed above, the Court's review of the trial transcript and the supporting record indicate that Fahrenkamp diligently and ably managed Bishawi's case.

Finally, the Court notes that even if it could find that Fahrenkamp's counsel fell below the range of competent, professional performance, Bishawi wholly fails to show that he suffered prejudice from any of the claimed errors. There was abundant evidence that Bishawi supplied Ladendorf and his couriers with cocaine on a regular basis between 1992 and 1997. **1 Trial Trans. pp. 152–93 (discussing cocaine deals between Ladendorf and Bishawi); 3 Trial Trans. pp. 7–30 (discussing general cocaine transactions between the Ladendorfs and Bishawi).** Additionally, there was evidence that Bishawi had sold "bullets," which were later identified as containing crack cocaine. **1 Trial Trans. pp. 195–98 (discussing the purchase of "bullets" from**

Bishawi); **2 Trial Trans. pp. 135–38 (discussing Bishawi's sales of "bullets"), 103 (identifying "bullets" as crack); 3 Trial Trans. pp. 20–22, 24–27 (discussing the purchase of "bullets" and identifying "bullets" as crack), 7–30 (discussing general drug transactions between the Ladendorfs and Bishawi), 122 (stating that Bishawi told Agent Shay that he obtained crack in the form of "bullets" from Venezuela).**

Moreover, the Government provided testimony from F.B.I. Agent Robert Shay regarding Bishawi's post-arrest confession, supported by a signed waiver of his *Miranda* rights. **Gov't Exh. 70;** *see* **3 Trial Trans. pp. 114–115.** Bishawi's confession, as related by Agent Shay's testimony further corroborated other witnesses' accounts of Bishawi's involvement in the drug conspiracy. **3 Trial Trans. pp. 113–27.** The testimony of the Government's witnesses was further supported with telephone and Western Union records. **Gov't Exhs. 6–67, 67a-b, 68, 69a-d;** *see* **1 Trial Trans. pp. 197–204 (testimony of Mike Ladendorf, discussing drug payments via Western Union sent to Bishawi and corresponding phone records); 2 Trial Trans. pp. 19–23 (testimony of Mike Ladendorf, discussing drug payments via Western Union sent to Bishawi and identifying the relevant records), 148–151 (testimony of Ledgerwood describing instances where he sent Western Union transfers to Bishawi and identifying the corresponding records); 3 Trial Trans. pp. 15–17 (testimony of Angela Ladendorf regarding drug payments via Western Union sent to Bishawi), 81–98, 108–113 (testimony discussing the large number of Western Union transfers involving Bishawi and the Ladendorfs), 125–32 (testimony discussing phone records, which indicated hundreds of calls between Bishawi and the Ladendorfs during the conspiracy).** Even if Fahrenkamp had been deficient in his representation, it is clear that none of the errors claimed by Bishawi prejudiced him in light of the overwhelming evidence that he was

in fact engaged in the conspiracy as charged.

Accordingly, the Court is unable to find that Fahrenkamp provided Bishawi with ineffective assistance over the course of his representation.

### c. Attorney Butts

Bishawi's fourth attorney, Eric Butts, represented him at sentencing. Bishawi claims that he was ineffective because he failed to investigate and call witnesses as Bishawi requested, and that he failed to request that the Court make a factual finding with respect to drug type and drug quantity. Additionally, Bishawi argues that Butts should have challenged the reliability of the evidence as to the distribution of crack. Bishawi also claims that Butts was ineffective in that he did not challenge the applicable guideline range, and argues that Butts should have attacked the indictment's failure to allege a drug quantity. Finally, Bishawi argues that Butts was ineffective because he failed to argue for a downward departure.

For reasons already indicated above, Butts was not ineffective when refusing to argue that the indictment should have alleged a drug quantity or that the jury was required to find the drug quantity beyond a reasonable doubt. Bishawi argues that had Butts done so, the Court would have been required to sentence him under § 841(b)(1)(C), which would have carried a twenty-year statutory maximum sentence in his case. Instead, Judge Riley found that the applicable drug quantities had been proven by a preponderance of the evidence and sentenced Bishawi under § 841(b)(1)(A), which carried a twenty-year mandatory minimum due to his prior felony drug offenses. Bishawi's argument in this regard is a clear loser. Bishawi's sentence was entered on October 1, 1999, prior to the Supreme Court's decision in *Apprendi v. New Jersey*. Thus, at the time of sentencing, drug type and quantity were undoubtedly issues for the district judge to resolve under a preponderance of the evidence standard. ***See Knox*, 400 F.3d at 520; *Edwards*, 105 F.3d at 1180-**

**81.** Moreover, to this day the Seventh Circuit repeatedly notes that drug quantity is not considered an element of the offense under 21 U.S.C. § 841, the opinions of other circuits notwithstanding. ***See United States v. Clark*, 538 F.3d 803, 812 (7th Cir. 2008).** Finally, it is well-established under Seventh Circuit law that "*Apprendi* has no application where a drug dealer is given a sentence at or below the maximum provided in § 841(b)(1)(C)." ***United States v. Clark*, 538 F.3d at 812 (7th Cir. 2008) (quoting *United States v. Hernandez*, 330 F.3d 964, 968 (7th Cir. 2003)).** Accordingly, the twenty-year sentence imposed under § 841(b)(1)(A) was not objectionable and Butts was not ineffective.

It is also clear that, despite Bishawi's contention, Butts did argue that crack cocaine was not involved in the conspiracy. **Sentencing Trans., Oct. 1, 1999, p. 12.** Moreover, even if Butts did not contest the reliability of the evidence regarding crack as vigorously as Bishawi may have wished, the Court calculated the drug types and quantities from Bishawi's own statement, along with the testimony of Ladendorf. Judge Riley found that

> [a]ll of the testimony throughout the case about bullets and these little cylindrical shaped items, and there was a lot of testimony about that, if you all just harken back to the trial. There was all kinds of testimony about these bullets, and there was even an explanation offered about those bullets by Mr. Bishawi, an explanation in definition of those particular items. . . . he explained what the, quote, "bullets" were, and those bullets were, without question, crack cocaine . . . and so the Court thinks it's only reasonable and only within the proof that was elicited at the trial that crack cocaine was indeed one of the substances being sponsored by this conspiracy, and I think that that's exactly what the circumstances were.

**Sentencing Trans., Oct. 1, 1999, p. 16.** Given the overwhelming evidence at trial that the conspiracy involved both cocaine and crack, the Court cannot find that Bishawi suffered any prejudice from Butts's representation with respect to this issue. It is unfathomable that stronger

protestations would have yielded a different result.

As for Bishawi's claims that Butts should have sought a downward departure, the Court notes that Bishawi himself drew the district court's attention to his request for a downward departure. *See* **Sentencing Trans., Oct. 1, 1999, p. 10:16-19.** Moreover, Butts did seek leniency for Bishawi, asking that Bishawi's sentence run concurrently with the sentence he was serving for an illegal immigration violation, given the difficult conditions prison may impose upon illegal aliens. **Sentencing Trans., Oct. 1, 1999, pp. 12-13.** Judge Riley was apparently persuaded by this argument, as he ordered that Bishawi's sentence run concurrently with his prior conviction. **Sentencing Trans., Oct. 1, 1999, p. 17.**

Finally, Bishawi argues that Butts was ineffective because he failed to call certain witnesses at Bishawi's request. Via letter dated August 9, 1999, Bishawi requested that Butts subpoena the following witnesses: Attorney John Stobbs III, David Ready, Pamela Heady, Guy Westmoreland, Tammy McDonalds, and Robert Ladendorf (Doc. 1-24, Exh. F3). However, Bishawi never states what these witnesses would have testified about and provides nothing from which this Court could determine that their testimony had any relevance to sentencing issues. Additionally, Ladendorf testified at length during trial, and Westmoreland took the Fifth Amendment at trial. It is not clear, nor does Bishawi suggest, what favorable information further testimony could have elicited. Thus, even if the Court could find error in Butts's failure to call these witnesses, Bishawi has not made the requisite showing that any such error resulted in prejudice.

Accordingly, this Court is unable to find that Butts provided ineffective assistance of counsel during the sentencing phase.

### d. Attorney Bilaisis

Finally, Bishawi's fifth attorney, Vilijia Bilaisis, represented him on his direct appeal.

When assessing a claim of ineffective assistance of appellate counsel, the Court applies the *Strickland* standard. ***Martin v. Evans*, 384 F.3d 848, 851 (7th Cir. 2004).** Bishawi claims that she was ineffective because she did not raise all of the issues he presented in his original § 2255 motion. Additionally, Bishawi complains that either Bilaisis or one of his prior attorneys was ineffective because defense counsel had not raised the issues addressed by ***Blakely v. Washington*, 542 U.S. 296 (2004)**, and ***United States v. Booker*, 375 F.3d 508 (7th Cir. 2004)**, at the trial level.[3]

In support of his first contention, Bishawi produces a letter written to Bilaisis stating, "I am expecting you to raise all of the issues raised in my § 2255 motion . . . ." (Doc. 1-24; Exh. F4). Nonetheless, Bilaisis raised only one issue on direct appeal—that the district judge erred in crediting evidence related to drug quantities. Bilaisis did, with permission of the Seventh Circuit, file a supplemental brief in order to address issues pertaining to ***Blakely v. Washington*, 542 U.S. 296 (2004)**, and ***United States v. Booker*, 375 F.3d 508 (7th Cir. 2004)**, which were both decided while Bishawi's appeal was pending.

As noted by the Seventh Circuit,

> appellate counsel's performance is deficient if he or she fails to argue an issue that is both obvious and clearly stronger than the issues raised. However, counsel is not required to raise every non-frivolous issue on appeal. There is a strong presumption that counsel's performance is reasonable . . . .

***Martin*, 384 F.3d at 851-52 (citations omitted).** In light of this, the Court cannot find that Bilaisis's failure to raise every claim Bishawi requested constitutes ineffective assistance of counsel. The claims that Bishawi raised in his first § 2255 motion were essentially the same claims he raises

---

[3] The Seventh Circuit's decision in Booker was later affirmed by the Supreme Court in ***United States v. Booker*, 543 U.S. 220 (2005).** However, Bishawi refers only to the Seventh Circuit's decision because the Supreme Court had not yet issued its decision at the time his direct appeal was pending.

-24-

here. In addition to his ineffective assistance claims, Bishawi argued (1) that the Government failed to prove beyond a reasonable doubt that he conspired to distribute crack cocaine, (2) that the indictment was defective in that it failed to specify any drug quantities, (3) that the Government failed to prove any drug quantities beyond a reasonable doubt, (4) that there was a variance between the indictment and the evidence offered at trial, (5) that the district court improperly admitted Agent Shay's testimony regarding Bishawi's alleged confession, (6) that the district court lacked subject matter jurisdiction, and (7) that Bishawi was denied his right to a speedy trial. *Bishawi v. United States*, 292 F.Supp.2d 1122, 1125-26 (S.D.Ill. Nov. 24, 2003).

These claims were without merit then just as they are now, for the reasons already indicated above. Appellate counsel was not required to raise frivolous arguments simply because Bishawi urged her to do so. Bilaisis cannot be found ineffective for refusing to raise claims that had no reasonable probability of altering the outcome of the proceedings.

Bishawi's final argument pertains to counsel's failure to properly present issues addressed by *Blakely* and *Booker* on direct appeal. In Bishawi's appeal, the Seventh Circuit found that the argument raised in his supplemental brief was "not properly presented, as it was never made in the district court." *See United States v. Bishawi*, 109 Fed.Appx. 813, 814 (7th Cir. 2004). According to Bishawi, the failure to properly present an issue must constitute ineffective assistance of counsel. However, Bishawi ignores the fact that Bilaisis cannot be held responsible for failing to first raise any issues at trial as she was only appointed to represent him on direct appeal. Moreover, the Seventh Circuit noted that Bishawi's trial counsel "cannot have been ineffective to have omitted [these arguments] in this court in prior proceedings." *Id.* at 814. An attorney cannot be deemed ineffective for their failure to anticipate a future decision, and neither *Blakely* nor *Booker* had been decided at the time of trial. Thus, neither Bilaisis nor Bishawi's other attorneys were

ineffective when they failed to foresee the decisions in *Blakely* and *Booker* at the trial level.

Accordingly, this Court is unable to find that Bilaisis provided ineffective assistance of counsel on Bishawi's direct appeal.

### D.  Conclusion

For all of the reasons stated above, the Court hereby **DENIES** Bishawi's motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 (Doc. 1).

**IT IS SO ORDERED.**

**DATED this 30th day of September 2008.**

**s/ Michael J. Reagan**
**Michael J. Reagan**
**United States District Judge**